# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ABDULLAH JONES,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:25cv651
                                         )
ALTON PRILLIMAN, et. al.,                )
                                         )
                    Defendants.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on three motions to dismiss (Docket Entries 12, 19, 25) (the "Motions") for, inter alia, lack of personal jurisdiction (see id.). For the reasons that follow, the Court should dismiss this action as to all Defendants.

## BACKGROUND

Plaintiff Abdullah Jones (the "Plaintiff"), "a North Carolina resident" (Docket Entry 1 (the "Complaint"), ¶ 1), seeks relief for violations of his "civil rights, fraud, and intentional tort[ious] conduct]" (id.) against four out-of-state defendants: "Defendant Alton Prill[a]man[, ] an individual and private lender who resides in Roanoke, Virigina" (id. ¶ 5), "Defendant John [ ] Prill[a]man[, ] an attorney . . . [who] resides and practices law in Roanoke, Virginia" (id. ¶ 6 (all-caps font omitted)), "Defendant David B. Carson [('Defendant Carson'),] a Virginia Circuit Court [j]udge who, at all relevant times, was presiding in the City of

Roanoke Circuit Court" (id. ¶ 7), and "Defendant Bank of Botetourt [(the 'Bank'),] a financial institution headquartered in Buchanan, Virginia" (id. ¶ 8) (collectively, the "Defendants").[1]

According to the Complaint:

"At the core of this case is a materially altered promissory note submitted by Defendant[ ] Alton Prillaman and Defendant John [ ] Prillaman[,] his son and [a]ttorney[,] to a Virginia state court in a petition for an ex parte injunction" (id. ¶ 1). "Plaintiff entered into [that] promissory note . . . at the office of Defendant Alton Prillaman . . . [in] Roanoke, V[irginia]" (id. ¶ 9) to effect "the closing [of] a multi-property real estate transaction in Danville, Virginia" (id. ¶ 11).  After learning of a "delay in closing" (id.), "Defendant Alton Prillaman by counsel Defendant John [ ] Prillaman submitted a Verified Petition For Injunction and Asset Freeze" (id. ¶ 13; see also Docket Entry 1-2 at 2-15) in Virginia state court, which Defendant Carson thereafter granted (see Docket Entry 1, ¶ 18; see also id. ¶¶ 14 (alleging that the petition "contained multiple material misrepresentations of fact," including an "altered" promissory note), 24-64 (alleging various deficiencies in Virginia state-court proceedings); Docket

---

1  As noted in one of the Motions (see Docket Entry 12 at 1 n.1), the Complaint misspells Defendants Alton and John Prillaman's last name as "Prilliman" (see, e.g., Docket Entry 1, ¶¶ 5-6). Further references to those Defendants in this Opinion, including quotations from the Complaint, use the correct spelling and omit alterations.

2

Entry 1-1 at 2 (attaching copy of original promissory note); Docket Entry 1-3 at 2-6 (attaching copy of temporary injunction order); Docket Entry 1-5 at 2-10 (attaching copy of motion to dissolve injunction); Docket Entry 1-6 at 2 (attaching copy of letter from Plaintiff's then-attorney to Defendant Carson)).

The Bank thereafter received Defendant Carson's order, which the Complaint alleges "was facially invalid" (Docket Entry 1, ¶ 1; see also id. ¶¶ 18-19 (alleging various conflicts of interest)) and "transmitted to the Bank [ ] by improper and unlawful means" (id. ¶ 1; see also id. ¶ 22 (alleging that the Bank "relied solely on an email transmission [of the order, rather than] a properly served court order")), and "immediately froze Plaintiff's accounts without confirming [the order's] legality or providing notice" (id. ¶ 1), which caused the "collapse of [Plaintiff's] $1.4 million real estate transaction, the loss of business revenue, and significant financial damage" (id.; see also id. ¶ 27 (alleging that "the freeze [ ] paralyzed Plaintiff's financial operations, prohibiting routine business transactions and even the ability to pay for basic necessities")); Docket Entry 1-4 at 2-3 (attaching demand letter from Plaintiff's then-attorney to Defendant John Prillaman); Docket Entry 1-8 at 2-5 (attaching copies of release and termination of "Danville, VA" real estate contract)).

The Complaint further alleges that, "[a]fter the injunction was dissolved" (Docket Entry 1, ¶ 65; accord Docket Entry 1-7 at 2-

3

3), "Defendant Alton Prillaman continued to engage in harassment, intimidation, and coercion . . . to force Plaintiff into a settlement . . . , including placing hundreds of unwanted and repeated phone calls to Plaintiff and Plaintiff's legal counsel" (Docket Entry 1, ¶ 65; accord id. ¶ 76 (alleging that "Defendant [Alton] Prillaman left a voicemail on Plaintiff's phone" to "harass[]" Plaintiff)), "unlawfully appear[ing] at the residence of Plaintiff's minor children approximately 50 times" (id. ¶ 65), and "contact[ing Plaintiff's] . . . business associate" (id. ¶ 67; see also id. ¶ 69 (alleging that "Defendant [Alton] Prillaman issued direct threats" to Plaintiff)).  Additionally, the Complaint alleges that "Defendant Alton Prillaman, through [ ] newly retained counsel . . ., initiated a civil lawsuit [against Plaintiff] in [ ] Roanoke County Circuit Court" (id. ¶ 72; see also Docket Entry 1-9 at 2-9 (attaching copies of summons and complaint)) and "reintroduced the same altered note as a central exhibit" (id. ¶ 73; accord Docket Entry 1-9 at 10), and that, in the course of that litigation, the "Bank [ ] processed and honored [a] subpoena . . . [for] Plaintiff's banking records[,] . . . result[ing] in a gross violation of Plaintiff's right to privacy and due process" (Docket Entry 1, ¶ 79).

The Complaint seeks relief against all Defendants for the "[v]iolation of [Plaintiff's c]ivil [r]ights [u]nder 42 U.S.C. §[ ]1983" (id. at 26; see also id. at 26-28 (asserting claims for

4

"[d]eprivation of [d]ue [p]rocess," "[a]buse of [p]rocess," "[f]raud [u]pon the [c]ourt," and "[i]ntentional [i]nfliction of [e]motional [d]istress"), 30 (asserting claim for "[c]ivil [c]onspiracy")). Additionally, the Complaint brings claims against "Defendants Alton[ and] John Prillaman and the Bank" (id. at 29) for "[i]nvasion of [p]rivacy and [u]nlawful [d]isclosure of [f]inancial [r]ecords" (id.), and against Defendant Alton Prillaman for "[c]ivil [e]xtortion" (id. at 30) and "[m]aterial [a]lteration of a [n]egotiable [i]nstrument" (id. at 31; see also id. at 32 (asserting same claim against "Defendant Alton Prillaman['s a]gents")).

Defendants moved to dismiss the Complaint for, inter alia, lack of personal jurisdiction. (See Docket Entry 12 at 1 (requesting dismissal for failure to "establish basis for personal jurisdiction" and, alternatively, "dismiss[al] under Fed[eral] R[ule of] Civ[il] P[rocedure (the 'Rules')] 12(b)(3)" in light of Plaintiff's "sign[ing of] a settlement agreement that encompasses the [Complaint's] claims . . . and sets the exclusive forum in Roanoke, Virginia"); Docket Entry 20 at 7 (requesting, "pursuant to Rule 12(b)(1)," dismissal "under the *Rooker-Feldman* doctrine" and dismissal for "failure to demonstrate personal jurisdiction"), 9 (requesting "dismiss[al] for failure to state a claim"); Docket Entry 25 at 1 (requesting dismissal "pursuant to [ ] Rules [ ] 12(b)(2), (3), and (6)" for "fail[ure] to . . . [establish]

5

personal jurisdiction," "[improper] venue," and "fail[ure] to state a claim").) Should Plaintiff fail to make a prima facie showing of personal jurisdiction over Defendants, "the [C]ourt need not address the [Motions'] remaining arguments for dismissal." Iannucci v. Alstate Process Serv., Inc., No. 1:06cv30, 2006 WL 2792228, at *7 (W.D.N.C. Sept. 27, 2006); see also Levi v. Twentieth Century Fox Film Corp., No. 3:16cv129, 2017 WL 1227933, at *4 n.9 (E.D. Va. Mar. 31, 2017) ("Unless waived, 'a court must find personal jurisdiction before determining the validity of a claim.'" (alterations omitted) (quoting Guidry v. United States Tobacco Co., 188 F.3d 619, 623 (5th Cir. 1999))).

Despite receiving notice of his right to respond to each of the Motions under Roseboro v. Garrison, 528 F.2d 30 (4th Cir. 1975) (see Docket Entries 14, 22, 27), Plaintiff did not submit a response in opposition to any of the Motions (see Docket Entries dated Sept. 17, 2025, to present). By Local Rule, the Court may treat any motion lacking a timely response as an uncontested motion, which the Court may grant without further notice. See M.D.N.C. LR 7.3(k).[2] Pursuant to the precedent of the United States Court of Appeals for the Fourth Circuit, however, the Court

---

2 More specifically, Local Rule 7.3(k) provides that, "[i]f no response brief is filed within the time required by [Local Rule 7.3(f)], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k); see also M.D.N.C. LR 7.3(f) (requiring response "within 21 days after service of the motion").

6

must evaluate the propriety of granting the Motions regardless of whether Plaintiff opposed dismissal.  See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) (explaining that, "[e]ven though [the plaintiffs] did not challenge the motions to dismiss, . . . the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper"); accord Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 449 (M.D.N.C. 2005) ("As with summary judgment motions, a court does not grant a motion for dismissal merely because it is uncontested.  Rather, a district court should review a motion to dismiss on its merits to determine whether the pleadings are sufficient.").[3]

---

3  On March 26, 2026, counsel for Defendant Alton Prillaman informed the Court "that Defendant Alton Prillaman passed away" (Docket Entry 29 at 1) by filing a notice with "the Court's CM/ECF system . . . and [notifying Plaintiff via] email and U.S. Mail" (id. at 2).  Under Rule 25(a), "[i]f a party dies and the claim is not extinguished, . . . [a] motion for substitution [of the proper party] may be made by any party . . . .  [However, i]f [such a] motion is not made within 90 days after service of a statement noting the death, the action [ ] against the decedent must be dismissed."  Fed. R. Civ. P. 25(a)(1); see also Fed. R. Civ. P. 5(b)(2) (allowing for service by, inter alia, "sending [document] to a registered user by filing it with the court's electronic-filing system" or "mailing [document] to the person's last known address"); Fed. R. Civ. P. 25(a)(3) (requiring "[a] statement noting death [ ] be served in the same manner" as "provided in Rule 5").  Here, even assuming that Plaintiff's claims against Defendant Alton Prillaman "[are] not extinguished," Fed. R. Civ. P. 25(a)(1), "more than 90 days have passed since the notice of death was filed with th[e C]ourt and served upon Plaintiff, and no motion to substitute [Defendant Alton Prillaman's] estate as a defendant has been filed," Graham v. Hurst, Civ. Action No. 5:13-3109, 2015 WL 670321, at *2 (E.D.N.C. Feb. 17, 2015) (see Docket Entries dated (continued...)

**DISCUSSION**

## I. Rule 12(b)(2) Standards

Each of the Motions seeks dismissal for, inter alia, lack of personal jurisdiction pursuant to Rule 12(b)(2). In response to a defendant's Rule 12(b)(2) challenge, a plaintiff must ultimately prove the existence of personal jurisdiction by a preponderance of the evidence. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). If a court considers a pretrial personal jurisdiction challenge without conducting an evidentiary hearing, though, the plaintiff need only "mak[e] a prima facie showing in support of [his] assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). In such circumstances, the "[C]ourt must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (internal quotation marks omitted). However, "[b]are allegations of sufficient contacts [with the forum state] cannot establish personal jurisdiction [over a defendant]," Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co., Civ. No. 14-1680, 2015 WL 926139, at *3

---

3(...continued)
March 26, 2026, to present; see also Docket Entry 3 at 1 (indicating Plaintiff's consent to receive documents electronically)). In light of these circumstances, and pursuant to Rule 25(a), the Court should dismiss Plaintiff's claims against Defendant Alton Prillaman.

8

n.19 (D. Md. Mar. 3, 2015) (citing <u>Lolavar v. de Santibanes</u>, 430 F.3d 221, 230 (4th Cir. 2005)), and, "[i]f a complaint does not present a *prima facie* showing of personal jurisdiction, it must be dismissed," <u>Murray v. Bierman, Geesing, Ward & Wood, LLC</u>, No. 1:11cv1623, 2012 WL 4480679, at \*1 (D. Md. Sept. 27, 2012) (citing <u>Carefirst</u>, 334 F.3d at 396).

## II.  Analysis

"A federal district court can exercise personal jurisdiction over a nonresident defendant only if '(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment.'" <u>Pathfinder Software, LLC v. Core Cashless, LLC</u>, 127 F. Supp. 3d 531, 538 (M.D.N.C. 2015) (quoting <u>Universal Leather</u>, 773 F.3d at 558); <u>see also</u> <u>VICOF II Tr. v. Estate of Ladenheim by Dector</u>, 716 F. Supp. 3d 381, 384 (M.D.N.C. 2024) ("The North Carolina Supreme Court has emphasized that the two-step process is, in fact, a two-step process, and that jurisdiction under North Carolina's long-arm statute must first be determined." (internal brackets, ellipsis, and quotation marks omitted)).

## A.  North Carolina's Long-Arm Statute

"North Carolina's long-arm statute provides twelve possible bases for asserting personal jurisdiction over foreign defendants." <u>Mountain Funding, LLC v. Blackwater Crossing, LLC</u>, No. 3:05cv513,

2006 WL 1582403, at *1 (W.D.N.C. June 5, 2006); <u>see also</u> N.C. Gen. Stat. § 1-75.4. Although Plaintiff has not indicated which of those bases applies to Defendants (<u>see</u> Docket Entry 1, ¶¶ 2-8), Defendant John Prillaman and the Bank challenge personal jurisdiction on due-process grounds alone (<u>see</u> Docket Entry 13 at 7-11; Docket Entry 26 at 4-12). Thus, as to those Defendants, "th[e C]ourt's sole inquiry is whether personal jurisdiction is proper under the Due Process Clause." <u>Lillie v. Guerra</u>, 559 F. Supp. 3d 464, 470 (M.D.N.C. 2021) (citing <u>Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001)).

Defendant Carson, on the other hand, contends that "there are no allegations against [him] in [the] Complaint that implicate even one of the[ long-arm statute's] options for personal jurisdiction" (Docket Entry 20 at 8) and seeks "dismiss[al] for lack of personal jurisdiction on that basis . . . [i]n addition to . . . the Due Process Clause" (<u>id.</u>). Considering even "the best argument[s] to be made in invoking in personam jurisdiction under the long-arm statute," <u>Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp. of Am.</u>, 753 F. Supp. 1315, 1320 (W.D.N.C. 1990), the statute proves inapplicable to Defendant Carson's out-of-state actions.[4]

---

4 As noted above, Plaintiff has not specified a basis in the long-arm statute for personal jurisdiction over Defendant Carson;
(continued...)

10

As alleged in the Complaint, Defendant Carson's actions pertain solely to his involvement in Virginia state-court proceedings (see Docket Entry 1, ¶¶ 1, 7, 18-19, 24, 26, 28-42, 45, 49-64), including his "order[] granting" the "[i]njunction and [a]sset [f]reeze" (id. ¶ 32). That out-of-state conduct eliminates several grounds for personal jurisdiction under the long-arm statute, including a defendant's "[l]ocal [p]resence or [s]tatus," N.C. Gen. Stat. § 1-75.4(1), "[l]ocal [a]ct or [o]mission," id. § 1-75.4(3), and "[l]ocal [s]ervices, [g]oods[,] or [c]ontracts," id. § 1-75.4(5). Likewise, the statute's ostensibly relevant provision concerning "injury to person or property within [North Carolina] arising out of an act or omission outside th[e] State," id. § 1-75.4(4), requires Defendant Carson to have "[s]olicit[ed] or [performed] services activities . . . within th[e] State," produced "thing[s] . . . used or consumed[] within th[e] State," or "sent [emails] into or within th[e] State," id., none of which occurred on the facts alleged. Finally, the Complaint fails to implicate even the portions of the long-arm

---

4(...continued)
however, "'[that] failure to plead the particulars of jurisdiction is not fatal to [Plaintiff's] claim[s against Defendant Carson] so long as the facts alleged permit the inference of jurisdiction under the statute,'" Dmarcian, Inc. v. Dmarcian Eur. BV, No. 1:21cv67, 2021 WL 2144915, at *6 (W.D.N.C. May 26, 2021) (quoting Williams v. Institute for Computational Stud. at Colo. State Univ., 85 N.C. App. 421, 428, 355 S.E.2d 177, 182 (1987)), amended in part, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021), aff'd, 60 F.4th 119 (4th Cir. 2023), modified sub nom. dmarcian, Inc. v. DMARC Advisor BV, 2024 WL 5188766 (W.D.N.C. Dec. 20, 2024).

11

statue pertaining to (A) "action[s ] aris[ing]" from "[l]ocal [p]roperty," id. § 1-75.4(6), as it does not allege any connection between North Carolina and "Plaintiff's [frozen] accounts" or "financial damages" resulting from the temporary injunction order (Docket Entry 1, ¶ 1) beyond Plaintiff's "domicile[]" (id. ¶ 3), or (B) the existence of a "loan [ ] secured by a mortgage or deed of trust on real property [ ] in [North Carolina]," N.C. Gen. Stat. § 1-75.4(6)(d) (see Docket Entry 1, ¶ 10 (alleging Plaintiff's intentional "omission of any secured instrument" in original promissory note)). Accordingly, Plaintiff has failed to present a prima facie showing that North Carolina's long-arm statute confers jurisdiction over Defendant Carson.[5]

### B. Due Process

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst, 334 F.3d at 397 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the

---

5 Alternatively, and for reasons stated in the analysis that follows above, Plaintiff fails to demonstrate that the application of North Carolina's long-arm statute to Defendant Carson's actions complies with due process.

12

litigation." Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotation marks omitted).

In particular, two methods for achieving personal jurisdiction exist: (1) "specific jurisdiction," in which the defendant's qualifying contacts with North Carolina constitute the basis for the litigation, and (2) "general jurisdiction," which arises when a defendant's "affiliations with [North Carolina] are so 'continuous and systematic' as to render [it] essentially at home in [North Carolina]." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "For a corporate (or other entity) defendant, 'at home' will usually mean their domicile and their principal place of business." Powers v. One Techs., LLC, No. 3:21cv89, 2021 WL 3519282, at *2 (W.D.N.C. Aug. 10, 2021) (citation omitted). As "for individuals, 'the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" Reddy v. Buttar, 38 F.4th 393, 400 (4th Cir. 2022) (quoting Goodyear, 564 U.S. at 924).

"When general personal jurisdiction does not apply, a court may still exercise specific personal jurisdiction . . . ." Powers, 2021 WL 3519282, at *2 (citation omitted). "In determining whether specific jurisdiction exists, [courts] consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the

13

state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst, 334 F.3d at 397.

"The purposeful-availment test is flexible, and [the] analysis proceeds on a case-by-case basis." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012). In the context of intentional torts, courts may assess purposeful availment through the so-called "'effects test.'" Carefirst, 334 F.3d at 398 n.7. Under this test, the plaintiff must show "that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Id.

Here, despite the Complaint's allegation that Defendants "caused direct and ongoing harm to [ ] Plaintiff in this district" (Docket Entry 1, ¶ 3), each of the Motions contends that the Complaint fails for lack of personal jurisdiction over Defendants (see Docket Entry 12 at 1 (seeking dismissal for lack of personal jurisdiction as to Defendants Alton and John Prillaman); Docket Entry 20 at 1, 7-9 (same as to Defendant Carson); Docket Entry 25

14

at 1 (same as to the Bank)).  Defendants' contentions entitle them
to dismissal.[6]

First, as a threshold matter, the allegation that Defendants
"harm[ed ] Plaintiff in this district" (Docket Entry 1, ¶ 3) "is
insufficient alone to establish personal jurisdiction" over
Defendants, Woods Int'l, Inc. v. McRoy, 436 F. Supp. 2d 744, 749
(M.D.N.C. 2006); see also 12 Mktg., LLC v. White, No. 7:24cv660,
2025 WL 2302136, at *4 (W.D. Va. Aug. 7, 2025) ("[T]he mere fact
that an injury is felt in a forum state is not sufficient to confer
jurisdiction.").[7]    Rather, that harm "must ultimately be
accompanied by [each D]efendant's own contacts with the state" to
support a prima facie showing of personal jurisdiction.  ESAB Grp.,
Inc., v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997); see
also Walden v. Fiore, 571 U.S. 277, 290 (2014) ("The proper
question is not where the plaintiff experienced a particular injury

_____

6  Thus, the instant recommendation obviates the need for
resolution of issues beyond personal jurisdiction raised in the
Motions.  See Iannucci, 2006 WL 2792228, at *7.

7  Plaintiff's "domicile[ ] in [ ] North Carolina" (Docket
Entry 1, ¶ 3) constitutes an equally insufficient basis for
personal jurisdiction.  See, e.g., Walden v. Fiore, 571 U.S. 277,
285 (2014) ("[The] 'minimum contacts' analysis looks to the
defendant's contacts with the forum State itself, not the
defendant's contacts with persons who reside there."); Estate of
Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514, 520 (D. Md.
2003) ("[H]aving a plaintiff domiciled in the forum state is
neither a necessary nor a sufficient condition for the exercise of
personal jurisdiction.").

15

or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Accordingly, assessing each Defendant's contacts with the forum state individually, see Calder, 465 U.S. at 790, and beginning with Defendant John Prillaman, the Complaint fails to allege any facts to render him essentially at home in North Carolina (see Docket Entry 1, ¶ 6 (alleging Virginia domicile)) for purposes of general personal jurisdiction. As to specific personal jurisdiction, the Complaint alleges a host of improper actions by Defendant John Prillaman while representing his father, Defendant Alton Prillaman, such as submitting "false[]" documents to a Virginia state court (Docket Entry 1, ¶ 14; accord id. at 28, 32-33), attempting "to coerce [Plaintiff into] settlement" (id. ¶ 47), "transmi[tting] . . . [Defendant Carson's] court order" to the Bank (id. ¶ 22), and causing Plaintiff to "suffer[] the collapse of a $1.4 million real estate transaction" (id. ¶ 1). None of those actions, as alleged in the Complaint, appear "purposefully directed" at the state of North Carolina, Burger King, 471 U.S. at 472; instead, the Complaint confines its allegations against Defendant John Prillaman — who "practices law in Roanoke, Virginia" (Docket Entry 1, ¶ 6) — to a dispute over a Virginia real estate transaction (see id. ¶ 11), "a promissory note . . . [executed in] V[irginia]" (id. ¶ 9), and subsequent state-court litigation in Virginia (see id. ¶¶ 13-64). Plaintiff also "suffered the collapse

16

of a [ ] real estate transaction" (id. ¶ 1) in Virginia (see id. ¶ 11) and therefore "felt the brunt of [Defendant John Prillaman's tortious actions] in [that state, rather than] the forum," Carefirst, 334 F.3d at 398 n.7.  Morever, none of Defendant John Prillaman's actions to litigate a dispute in Virginia can support personal jurisdiction over him in North Carolina, as "[c]ourts routinely reject personal jurisdiction premised solely on prior judicial actions in other states . . ., even when brought against a forum resident" such as Plaintiff, AU Optronics Corp. Am. v. Vista Peak Ventures, LLC, No. 18cv4638, 2019 WL 690282, at *3 (N.D. Cal. Feb. 19, 2019) (internal quotation marks, brackets, and citation omitted).

Specific personal jurisdiction as to Defendant Carson fails for similar reasons.[8]  As alleged in the Complaint, "at all relevant times, [Defendant Carson] presid[ed over Defendant Alton Prillaman's suit against Plaintiff] in the City of Roanoke Circuit Court" (Docket Entry 1, ¶ 7), "issued [an] unlawful injunction" (id. ¶ 1; accord id. ¶¶ 3, 18-19, 26), and "act[ed] in a clear conflict of interest" (id. ¶ 7; accord id. ¶¶ 19, 28-61; see also id. ¶ 3 (alleging that "issuance and enforcement of an unlawful injunction . . . harm[ed ] Plaintiff in this district")).  As noted

_____

[8] The Complaint fails to allege Defendant Carson's domicile (see Docket Entry 1, ¶ 7 (alleging only that Defendant Carson "preside[s] in the City of Roanoke Circuit Court")) and, accordingly, fails to demonstrate a basis for general personal jurisdiction over him in North Carolina.

17

above, such allegations represent, for present purposes, impermissible attempts to establish "personal jurisdiction premised solely on prior judicial actions in [an]other state[,]" <u>AU Optronics</u>, 2019 WL 690282, at *3 (internal quotation marks omitted), and, in any event, bear no relation to the forum state of North Carolina beyond "the mere fact that [Plaintiff sustained] injur[ies ] felt [there]," <u>12 Mktg., LLC</u>, 2025 WL 2302136, at *4.

The Complaint likewise fails to establish personal jurisdiction over the Bank. First, as to general personal jurisdiction over the Bank, which maintains its "headquarter[s] in Buchanan, Virginia" (<u>id.</u> ¶ 8), the Complaint fails to allege any "'continuous and systematic' [affiliations with North Carolina] to render [the Bank] essentially at home in the forum state," <u>Goodyear</u>, 564 U.S. at 919. As to specific personal jurisdiction, the Complaint alleges that the Bank "froze Plaintiff's accounts" (Docket Entry 1, ¶ 1), causing "financial damage" (<u>id.</u>) and "the collapse of a $1.4 million real estate transaction" (<u>id.</u>) "in Danville, Virginia" (<u>id.</u> ¶ 11), as well as that the Bank "honored [a Virginia state-court] subpoena[ by] . . . releasing Plaintiff's banking records" (<u>id.</u> ¶ 79). Such allegations do not indicate that the Bank directed its actions at the State of North Carolina or "expressly aimed [its] tortious conduct at the forum," <u>Carefirst</u>, 334 F.3d at 398 n.7, or even that "[P]laintiff felt the brunt of the harm in the forum," <u>id.</u>, as the asset freeze allegedly caused

18

the collapse of a real estate transaction <u>in Virginia</u> (<u>see</u> Docket Entry 1, ¶¶ 1, 11), and the Bank complied with a subpoena arising from state-court litigation in that same state (<u>see</u> <u>id.</u> ¶¶ 72-79).[9]

### CONCLUSION

Rule 25(a) mandates dismissal of Plaintiff's claims against Defendant Alton Prillaman, and Plaintiff has not made a prima facie showing of personal jurisdiction as to the remaining Defendants.

**IT IS THEREFORE RECOMMENDED** (A) that the Court dismiss Plaintiff's claims against Defendant Alton Prillaman pursuant to Rule 25(a) and (B) that the Court grant in part the Motions (Docket Entries 12, 19, 25) by dismissing this action as to Defendants John Prillaman, Carson, and the Bank pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

This 29th day of July, 2026.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

9 Relatedly, even if the subpoena arose from litigation within North Carolina, which it did not (<u>see</u> Docket Entry 1, ¶¶ 72-79), "several courts have found that responding to a subpoena issued during litigation in the forum State does not subject the respondent to personal jurisdiction in that State," <u>Farooq v. Standard Chartered Bank</u>, No. 4:24cv336, 2026 WL 120674, at *2 (E.D. Tex. Jan. 15, 2026), <u>recommendation adopted</u>, 2026 WL 531743 (E.D. Tex. Feb. 25, 2026); <u>see also</u> <u>id.</u> (reasoning that "compliance with a subpoena can be compelled — and is therefore not voluntary" and collecting cases), further evincing the lack of specific personal jurisdiction over the Bank on the facts alleged.

19
